464 So.2d 1202 (1984)
Robert Michael RUSSELL, Appellant,
v.
STATE of Florida, DEPARTMENT OF CORRECTIONS, and Division of Risk Management, Appellee.
No. AV-146.
District Court of Appeal of Florida, First District.
July 18, 1984.
Rehearing Denied January 22, 1985.
Israel Abrams of Abrams, Suskin & Berglund, North Miami Beach, for appellant.
Michael T. Burke of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellee.
MILLS, Judge.
Russell appeals from a deputy commissioner's workers' compensation order denying his claim for benefits. He contends the deputy erred in finding that the shooting episode of 23 August 1982 was not an accident, that his myocardial infarction of 7 September 1982 did not result from that accident, and that his myocardial infarction was not an occupational disease. We affirm and adopt the deputy's findings because they are supported by the law and by competent substantial evidence.
The pertinent findings are:
I find:
1. That since April 1974, the claimant was employed by the State of Florida, Department of Corrections, Parole and Probation Services, where he is still employed.
2. That the claimant's fiance (Nanette Brochin), who is presently his wife, was also a parole officer and had a parolee, one black male named Phillips, who had a persistent history of crime. Commencing approximately November 14, 1980, Phillips began a period of harassment of Nanette Brochin and the claimant. Because of his activities, Phillips' parole was revoked and he was sent to Raiford in March 1981. All things were quiet until on or about August 11, 1982, when Phillips was again released on parole. The claimant saw Phillips at the parole office on that date. Again, all things were quiet until August 23, 1982, when, at approximately 10:00 P.M., the claimant was sitting in a padded lounge chair at home, his wife sitting on the couch, and approximately four shots were fired into their living room. One of the shells struck the lounge chair and one shell struck the wall; none of them struck the claimant or his wife. On August 31, 1982, the claimant received a phone call that his boss had been gunned down and killed, presumably by Phillips. The claimant arrived at his office at approximately 9:15 P.M. where he remained until approximately 4:30 A.M. on September 1, doing what he could to assist the homicide bureau. The claimant did not work on Thursday, September 2, and on Friday, September 3, he went to the funeral. On Saturday, September 4, he did not work. On Sunday, September 5, he went to a barbeque in Miami Beach put on by the PBA, and on Monday, September 6, he went to dinner at the home of a *1203 friend; at the barbeque he had approximately two beers and at his friend's he had a glass of wine and on both occasions he felt fine.
3. That, commencing on Saturday, September 4, 1982, the claimant began to suffer a sensation he attributed to indigestion; it was not persistent but would come and go. The claimant's wife testified to certain feelings of discomfort starting on or about August 23, 1982, and occurring periodically. The claimant received no medical attention until the morning of September 7, 1982, when he awakened at 4:00 A.M., with an increase in his symptomatology. On that date, he went to the American Health Clinic, was given an EKG and rushed by ambulance to Parkway General Hospital with chest pains. He subsequently underwent cardiac catherization.
4. From the evidence and testimony presented, it is clear that the claimant suffered a heart attack on or about September 7, 1982.
5. That the claimant is contending that the heart attack is compensable under one of two theories, either as an occupational disease or as an accident. Under either theory, the claim must be denied. The law of the State of Florida is against him. The First District Court of Appeal has rejected the theory that heart failure, from emotional stress, is compensable as an occupational disease and that emotional stress, in and of itself, is not sufficient to make a heart attack compensable. Under the alternative theory that this was an accident, there was no unusual exertion, nor was there an identifiable event triggering the heart condition. The claimant asserts that the identifiable event was August 23, 1982, when the bullets were fired into his living room but there was no impact, there was no touching, there was no battery on the claimant. Moreover, there was no medical care or treatment rendered to the claimant until some 15 days later on September 7, 1982. In fact, all of the medical testimony presented for my consideration would deny the contention that there was a single identifiable act. Both Drs. Turnoff and Willner testified that it was the ongoing, continuing stress that caused the heart attack.
6. Based upon all of the foregoing, I find that the heart attack suffered by the claimant, together with the related condition, is not compensable, did not occur in the course and scope of his employment, nor did it arise out of his employment; and the claim must, therefore, be denied.
AFFIRMED.
SHIVERS and WIGGINTON, JJ., concur.